# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# NORTHERN DIVISION
# AT ASHLAND

**CIVIL ACTION NO. 13-61-HRW-CJS**

**KEVIN W. BROWN**                                                             **PLAINTIFF**

**v.**               **REPORT AND RECOMMENDATION**
                  **AND ORDER**

**ARCH WOOD PROTECTION,
INC., ET AL.**                                                           **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff Kevin W. Brown filed this product liability action against Defendants Arch Wood Protection, Inc. (Arch), Osmose, Inc. (Osmose), Koppers Inc. (Koppers), Langdale Forest Products Company (Langdale), T.R. Miller Mill Co., Inc. (T.R. Miller), and Chemical Specialties, Inc. (CSI). (R. 1). Before the Court are Defendants Arch, Osmose, Koppers, and T.R. Miller's Joint Motion to Dismiss (R. 11), and CSI's Motion to Dismiss and Motion for Oral Argument (R. 3, 5). Plaintiff has filed his respective Responses (R. 21, 32), to which these Defendants have filed Replies (R. 29, 36). This matter has been referred to the undersigned for preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (R. 43). For the reasons that follow, CSI's Motion for Oral Argument will be **denied**,[1] and it will be **recommended** that the Motions to Dismiss be **denied.**

---

[1] CSI has requested oral argument pursuant to Joint Local Rule 7.1(f), which provides that parties may request oral argument but does not state that such is required to be held. Oral argument is not necessary to determine the Motions to Dismiss, as the facts are not in dispute for purposes of the Motions, and the issues have been thoroughly briefed.

**I.     FACTUAL BACKGROUND**[2]

Plaintiff Kevin Brown has worked as a pole climber on a line crew for Kentucky Power Company (Kentucky Power) since 1981.[3] (*See* R. 1, at ¶ 12). Brown claims he was exposed to toxic levels of arsenic contained in chromated copper arsenate (CCA)—a substance used to preserve the wood in utility poles and cross-arms—during his employment at Kentucky Power. (*Id.* at ¶¶ 4, 13). Brown was allegedly exposed to CCA while handling, sawing, and drilling CCA-treated wood as part of his employment duties, as well as through fighting fires on the CCA-treated utility poles. (*Id.* at ¶ 14). Brown claims "he was poisoned" by his exposure to arsenic in the CCA-treated utility poles and that he has suffered health problems. (*Id.* at ¶¶ 13, 33, 47).

Brown alleges that Defendants Arch, Osmose and CSI manufactured CCA. (*Id.* at ¶ 2). He further alleges that from 1981 to 2013, Defendants Koppers, Langdale, and T.R. Miller purchased the CCA preservative from Arch, Osmose and CSI to treat utility poles and cross-arms that were sold to Kentucky Power. (*Id.* at ¶¶ 3, 45). Brown claims that Arch, Osmose and CSI knew of the health hazards caused by CCA exposure, but failed to warn of its danger and deceptively persuaded the EPA to eliminate the proposed mandatory warning labels for CCA treated wood. (*Id.* at ¶¶ 15, 17-19, 21-27, 31). In addition, Brown asserts that despite knowing of the hazards of CCA exposure, Arch, Osmose and CSI represented that CCA treated wood could be handled in the same manner as untreated wood. (*Id.* at ¶¶ 30, 31, 34). Brown further alleges that all Defendants knew or should of

---

[2]The facts asserted in Plaintiff's Complaint are accepted as true for purposes of considering Defendants' threshold dismissal motions.

[3]In his briefing, Plaintiff asserts that in April 2013, his illness forced him to take leave from work.

known of the dangers associated with CCA exposure, yet failed to warn of its hazards, to his injury. (*Id*. at ¶¶ 28, 35, 37, 46-47).

## II. STANDARD OF REVIEW

When adjudicating a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint alleges sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Although the complaint need not contain "detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In considering a motion to dismiss, the Court is required to "accept all the Plaintiff['s] factual allegations as true and construe the complaint in the light most favorable to the Plaintiff[]." *Hill v. Blue Cross & Blue Shield of Mich*., 409 F.3d 710, 716 (6th Cir. 2005). The Court need not, however, accept as true legal conclusions cast in the form of factual allegations if those conclusions cannot be plausibly drawn from the facts, as alleged. *See Iqbal*, 556 U.S. at 678.

## III. ANALYSIS

### A. Plaintiff's Complaint Sufficiently Alleges the Defendants' Products Caused Him Harm

Defendants Arch, Osmose, Koppers, T.R. Miller and CSI assert Plaintiff failed to properly allege that they manufactured, sold, or distributed the specific product that allegedly caused his

injury, and therefore they are entitled to be dismissed from this action. (R. 3, at 3-7; R. 11, at 6-8). However, Plaintiff maintains, and the Court agrees, that he has adequately pled that the moving Defendants manufactured and distributed the product causing his injury.

Plaintiff has asserted a failure to warn claim against Defendants. "A threshold requirement of any products-liability claim is that the plaintiff assert that the defendant's product caused the plaintiff's injury." *Smith v. Wyeth, Inc.*, 657 F.3d 420, 423 (6th Cir. 2011), *cert. denied*, __ U.S. __, 132 S. Ct. 2103 (Apr. 30, 2012) (citing *Holbrook v. Rose*, 458 S.W.2d 155, 157 (Ky. 1970)). Thus, to survive a motion to dismiss, Plaintiff must have asserted sufficient allegations to allow at least a reasonable inference that these Defendants made, sold or distributed the product causing his injury. *In re Darvocet*, 856 F. Supp. 2d 904, 908 (E.D. Ky. 2012).

Plaintiff makes the following allegations in his complaint:

2. [Arch, Osmose, and CSI] manufactured the arsenic-based pesticide known as Chromated Copper Arsenate (CCA), which is used as a preservative to treat the utility poles and cross-arms[.]

3. During the time period of approximately 1981 to 2013, [Koppers, Langdale, and T.R. Miller] purchased the CCA preservative from Arch, Osmose and CSI to treat utility poles and cross-arms, which were sold to Plaintiff Kevin Brown's, employer, Kentucky Power Company ("Kentucky Power"), in Ashland, Kentucky[.]
. . .

12. Kevin Brown worked for Kentucky Power on the line crew as a pole climber from April 1, 1981 to the present date.

13. The Plaintiff, Kevin Brown, was poisoned by exposure to chromium, copper, and, in particular, arsenic released from CCA treated utility poles and cross-arms while employed by Kentucky Power.

14. Mr. Brown was exposed to arsenic, chromium, and copper on and in CCA treated wood for thirty-two (32) years by handling, sawing, and drilling the CCA treated wood as a part of his employment. Mr. Brown used chainsaws to saw the CCA treated wood. Mr. Brown used electric, gas[-]powered, and pneumatic drills to

drill the CCA treated wood. In addition, Mr. Brown was exposed to arsenic, chromium, and copper as a result of fighting and extinguishing hundreds of fires on CCA treated utility poles as part of his employment.
. . .

33.     On October 19, 2012, Mr. Brown was diagnosed with adverse health effects consistent with significant exposure to arsenic from the CCA utility poles he handled, sawed, drilled, and extinguished fires. These health effects included: shortness of breath, sinusitis, bronchial cuffing, airway obstruction, fatigue, loss of concentration, and diffuse feelings with the need for psychosocial testing to test for cognitive or psychodynamic depression.

. . .

45.     The wood treaters, Koppers, Langdale and T.R. Miller, purchased the CCA preservative that they used to treat the CCA treated utility poles and cross-arms from the chemical manufacturers, Arch, Osmose and CSI.

. . .

47.     As a direct and proximate result of Defendants' defective and unreasonably dangerous product, Mr. Brown was poisoned by the arsenic, chromium and copper on and in CCA utility poles and cross-arms by using, handling, sawing and drilling the CCA treated wood, and by extinguishing CCA treated utility pole fires.

(R. 1).

These allegations taken together sufficiently identify the moving Defendants as having either directly manufactured the CCA or having purchased the CCA from the chemical manufacturers and used it to treat its products, which it then sold to Brown's employer during his employment. Further, Plaintiff alleges that all of the Defendants knew of the dangers of CCA exposure and yet failed to warn of its dangers, to his injury. (R. 1, at ¶¶ 28, 35, 37, 46-47). These allegations are sufficient to withstand a motion to dismiss. *See Smith v. Univar USA, Inc.*, No. 12-134-ART, 2013 WL 1136624, at *4 (E.D. Ky. Mar. 18, 2013) (complaint sufficient to withstand motion to dismiss where

allegations were that all defendants provided chemical at issue to plaintiffs' employer during the entire period plaintiffs worked at plant).

Moving Defendants argue that the claims against them should be dismissed for the same reasons Xanodyne Pharmaceutical was dismissed in *In re Darvocet*, 856 F. Supp. 2d at 908. However, as Judge Reeves explained, the plaintiffs in that case alleged that they either ingested another company's product, alleged they did not know which defendant sold or manufactured the product they ingested, or failed to provide factual allegations regarding the relevant time frame in which the product was ingested. (*Id.*). The case at bar is distinguishable, as explained above, because Brown specifically alleged he was injured by the wood treating Defendants' purchase and use of the chemical manufacturers' CCA on the utility poles and cross-arms sold to Brown's employer during the relevant time frame. These allegations withstand a motion to dismiss.

B. **Plaintiff's Complaint Adequately Alleges that He was Harmed by Arch and Osmose's CCA**

Defendants Arch and Osmose argue that they should be dismissed from this action because Brown concedes that they did not manufacture, sell or distribute the utility poles that allegedly harmed him. (R. 11-1, at 8-9). They further argue that Plaintiff alleges only that these two Defendants manufactured the CCA solution that was then used by the wood treating Defendants to treat the utility poles and cross-arms sold to Brown's employer. Arch and Osmose argue that these allegations are insufficient for the Court to draw a reasonable inference they are liable for Plaintiff's alleged injuries on a product liability claim.

Plaintiff's complaint, however, contains sufficient allegations that Brown was harmed by the arsenic contained in the CCA produced by Arch and Osmose. (R. 1, at ¶¶ 6-14, 32, 33, 45, 47). The

Complaint also contains sufficient allegations that these two Defendants had knowledge of the dangers of their product yet failed to provide warnings. (*Id*. at ¶¶ 15, 31, 34-38). These allegations are sufficient to allow a reasonable inference that Arch's and Osmose's products caused Brown's injury. *See Smith*, 2013 WL 1136624, at ** 3-4.

### C. Complaint Sufficiently alleges Chemical Manufacturers' Product Unreasonably Dangerous as to Withstand Motion to Dismiss Plaintiff's Failure to Warn Claim

Arch, Osmose and CSI argue that as manufacturers of CCA, they have no duty to warn the end-user of potential risks associated with products that were treated with CCA. The presiding District Judge, however, has ruled in two factually similar cases that the CCA manufacturers were not entitled to dismissal at this stage of the litigation because the complaints therein set forth sufficient dangers of CCA "to raise a reasonable expectation that discovery will reveal evidence of [the requisite elements of his claim]." *See Stevens v. Arch Wood Prot., Inc.*, No. 0:12-46, at Dkt. No. 31, at 5 (E.D. Ky. Feb. 21, 2013); *McCarty v. Arch Wood Prot., Inc.* No. 0:11-109, at Dkt. No. 53, at 5-6 (E.D. Ky. June 14, 2012) (finding complaint alleged sufficient dangers of CCA to render plaintiffs' claims plausible).

The Court explained in *Stevens* and *McCarty* that the chemical manufacturers' reliance on *Worldwide Equipment, Inc. v. Mullins*, 11 S.W.3d 50 (Ky. Ct. App. 1999) was misplaced.

> *Mullins* limits a manufacturer's liability in situations where its product, which was not defective in and of itself, was incorporated into a larger product which was, ultimately, defective in some way. Whereas, in this case, it is not the final product which Plaintiffs claim is the cause of their damages, it is component itself -the CCA. Plaintiffs argue that it is not a benign component, but, rather, a hazardous material in and of itself. As such, *Mullins* is not dispositive.

*McCarty*, No. 0:11-109, Dkt. No. 53, at 5-6; *see also Stevens*, No. 0:12-46, Dkt. No. 31, at 4.

7

Arch, Osmose and CSI argue that Plaintiff has not alleged that their product was defective, but only that it failed to warn of the dangers of working with the end-product, the CCA-treated utility poles and cross-arms. However, as explained above, Plaintiff alleges that Arch, Osmose and CSI knew of the dangers created by exposure to their product, but failed to warn of the dangers. (R. 1, at ¶¶ 15-18, 23, 24, 27, 29, 31, 38). Plaintiff further alleges that not only did these Defendants not warn of the dangers associated with their product, but that they made false representations to the United States' Environmental Protection Agency (EPA) that warnings were not necessary on end-products coated in CCA. (*Id*. at ¶¶ 20-22, 26). Plaintiff has also alleged that Arch fraudulently concealed the known hazards of its product by advertising that smoke exposure from the burning of CCA-treated wood is no more hazardous than smoke from untreated wood. (*Id*. at ¶ 30). He further asserts that Arch, Osmose and CSI falsely and fraudulently represented that CCA-treated wood could be handled in the same manner as untreated wood, knowing this claim was not true. (*Id*. at ¶¶ 34-35).

Under Kentucky law, if a "component part is not defective when sold by its manufacturer, then, no duty to warn can attach to the component manufacturer." *Waterfill v. National Molding Corp.*, 215 F. App'x 402, 405 (6th Cir. 2007). Kentucky "[c]ourts have distinguished three types of product defects: (1) manufacturing defects or deviations from the product's design that create unreasonable risks of harm; (2) design defects or unreasonable risks of harm inherent in the product's design; and (3) warning defects or unreasonable risks of harm that could have been reduced or avoided by the provision of reasonable instructions or warnings." *Edwards v. Hop Sin, Inc.*, 140 S.W.3d 13, 15 (Ky. Ct. App. 2003) (citing *Ulrich v. Kasco Abrasives Co.*, 532 S.W.2d 197, 200 (Ky. 1976)). Thus, "a product may be 'defective' when it is properly made according to an

unreasonably dangerous design, or when it is not accompanied by adequate instructions and warnings of the dangers attending its use." *Vaughn v. Alternative Design Mfg. & Supply, Inc.*, No. 6:07-cv-429, 2008 WL 4602960, at *6 (E.D. Ky. 2008) (citing *Ulrich*, 532 S.W.2d at 200).

Plaintiff has asserted sufficient allegations that Defendants Arch, Osmose, and CSI knew that absent warnings of proper handling, the CCA they each manufactured was unreasonably dangerous. (R. 1, at ¶¶ 5-11, 15-31, 34-39, 41-42, 46). Thus, as in *McCarty* and *Stevens*, Plaintiff has asserted sufficient allegations to distinguish the component part at issue here, the CCA, from the application of the component-part rule discussed in *Mullins*, as Plaintiff has made sufficient allegations that CCA is in and of itself a dangerous product that requires appropriate warnings.[4] (*Id.*).

Further, the case at bar is procedurally distinguishable from those cited by Defendants, wherein the courts granted motions for summary judgment after finding there was no evidence that the component part itself was unreasonably dangerous. *See, e.g., Waterfill,* 215 F. App'x at 405 (component part manufacturer granted summary judgment because no evidence buckle on safety harness was itself unreasonably dangerous); *Jacobs*, 67 F.3d at 1236-42 (affirmed summary judgment upon finding product not in and of itself dangerous or defective; even if duty to warn existed, evidence established that defendant provided sophisticated intermediary all necessary warnings); *Childress v. Gresen Mfg. Co.*, 888 F.2d 45 (6th Cir. 1989) (affirmed summary judgment to non-defective component part manufacturer, applying Michigan law); *Trek Bicycle Corp. v. Mitsui*

---

[4]Defendants Arch and Osmose argue that this case is factually similar to *Jacobs v. E.I. du Pont de Nemours & Co.*, 67 F.3d 1219 (6th Cir. 1995). However, in *Jacobs*, which was before the court on summary judgment motion, the court found no evidence was presented that the component part, the plastic used in the TMJ implants, was itself defective and, therefore, the manufacturer did not have a duty to warn under Ohio law. *Id.* at 1241-42. Moreover, the court found that even if a duty to warn existed, the evidence established that the manufacturer fulfilled its duty under Ohio law by providing all necessary warnings to the sophisticated intermediary who manufactured the product. *Id*. at 1238-41.

*Sumitomo Ins. Co.,* No. 5:05-cv-44-R, 2006 WL 1642298, at *4 (W.D. Ky. 2006) (insurance company granted summary judgment upon finding no evidence brake lever its insured manufactured was defective).

Here, Brown's Complaint is reviewed under the applicable standard for a motion to dismiss. As explained above, his Complaint pleads facts sufficient to allow the Court to draw a reasonable inference that the moving Defendants are liable for their failure to warn of the allegedly unreasonably dangerous product. Thus, Plaintiff has stated a claim for relief that is plausible on its face.

### IV. CONCLUSION

For the reasons stated herein, and the Court being otherwise sufficiently advised,

**IT IS RECOMMENDED** that

1. Defendants Arch Wood Protection, Inc., Osmose, Inc., Koppers Inc., and T.R. Miller Mill Co., Inc.'s Joint Motion to Dismiss (R. 11) be **denied**; and,

2. Defendant Chemical Specialties, Inc.'s Motion to Dismiss (R. 3) be **denied**.

**IT IS ORDERED** that Chemical Specialties, Inc.'s Motion for Oral Argument (R. 5) is **denied**.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are

insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may respond to another's objections within 14 days of being served with those objections. Fed. R. Civ. P. 72(b)(2).

Dated this 13th day of February, 2014.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

G:\DATA\Orders\civil ashland\2013\13-61 R&R mtd.wpd